CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JAN 18 2006

JOHN F. CORCORAN, CLERK
BY: _____
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LYNCHBURG COMMUNICATIONS SYSTEMS, INC., <br><br> and <br><br> SPECIALTY ELECTRONICS SYSTEMS COMPANY, INC., <br> *Plaintiffs,* <br><br> v. <br><br> OHIO STATE CELLULAR PHONE COMPANY, INC., <br><br> and <br><br> UNITED STATES CELLULAR CORPORATION, <br> *Defendants.* | CIVIL ACTION NO. 6:03CV00107 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross-motions for partial summary judgment, both heard before the Court on December 22, 2005. For the following reasons, Defendants' Motion will be GRANTED and Plaintiffs' Motion will be DENIED.

### I. SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(c) provides that a Court shall grant summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

1

party is entitled to a judgment as a matter of law."

In addition to the particular forms of evidence listed in R. 65(c), the Court may consider any material that would be admissible at trial. *See, e.g., Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *Aguilera v. Cook County Police & Corr. Merit Bd.*, 760 F.2d 844, 849 (7th Cir.), *cert. denied* 474 U.S. 907 (1985). However, hearsay evidence which would be inadmissible at trial may not be considered on a motion for summary judgment. *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991). Generally, documents submitted in support of a summary judgment motion must be authenticated by and attached to an affidavit that meets the requirements of R. 56(e). Unsworn, unauthenticated documents are properly disregarded. *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). However, unauthenticated documents may be considered by the court if not challenged. *See* 10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. §2722 (3d ed. 1997 & Supp.)(collecting cases); *cf. Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 340 n.9 (4th Cir. 2001).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'... an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

2

## II. BACKGROUND

Plaintiffs Lynchburg Communications Systems, Inc. ("Lynchburg") and Specialty Electronics Systems Co., Inc. ("SESCO") brought this diversity action on December 16, 2003, and subsequently filed a first amended complaint on January 28, 2004, and a second amended complaint on August 24, 2004 (hereafter "Complaint" or "Compl."). Counts 1–12 of the Complaint are directed against Defendant Ohio State Cellular Phone Company, Inc. ("Ohio State"). Counts 11 and 13 request relief from Defendant United States Cellular Corp. ("U.S. Cell"). Ohio State is a subsidiary of U.S. Cell. (Compl. ¶30).

### A. Facts

On July 16, 1996, Lynchburg, SESCO, and Ohio State entered into a "Ground Lease." (Compl. Exh. A). The Ground Lease lists Lynchburg as the "Lessor" and SESCO as the "Owner" of a 60.0 feet by 60.0 feet Leasehold Parcel (the "Parcel") on No Business Mountain in Bedford County, Virginia. (*Id.*, Introd., ¶1). Ohio State is the designated Lessee.[1] (*Id.*, Introd.). Under the terms of the Ground Lease, Ohio State paid a lump sum of $54,000 for a 30-year lease of the Parcel, and also gained various easement rights. (*Id.*, ¶¶2, 3, 6, 8). A provision entitled "Use of Premises" provided that Ohio State could use the Parcel "to construct, operate, modify as necessary, and maintain thereon a communications antenna tower . . . ."[2] (the "Tower"). (*Id.*, ¶5). A subleasing provision that has engendered much dispute between the parties is as follows:

---

[1] The Ground Lease notes that Ohio State does business within the Commonwealth of Virginia under the fictitious name "United States Cellular Wireless Communications"—which is not to be confused with Ohio State's parent company, United States Cellular Corporation. (*Id.*)

[2] Construction of the Tower on the Parcel was completed on or about August 23, 1996. (Compl. ¶28).

3

(a) Lessee shall have the unreserved and unqualified right to sublet Tower, building, and ground space upon the Premises for hire to additional communications tenants who are operators licensed in the Cellular Radiotelephone Service under Part 22 Subpart H of the FCC Rules, or are providers of Personal Communications Services under Part 24 of the FCC Rules, without the necessity of obtaining Lessor's consent.
(b) As to all other additional communications tenants, Lessee shall have the unreserved and unqualified right to sublet Tower, building, and ground space upon the Premises for hire to such additional communications tenants who contact the Lessee directly requesting such space, without the necessity of obtaining Lessor's consent. Lessee shall provide Lessor with a copy of any such lease within 15 days following execution thereof, and Lessee shall pay over to Lessor . . . thirty percent (30%) of all amounts actually received or collected from such additional tenants since the last such remittance previously made.
(c) Lessor shall have the right to demise space for hire upon Lessee's tower to additional communications tenants other than those described in Section 19(a) and (b) herein, who contact the Lessor directly requesting such space, subject to the structural limitations of the Tower and subject to the requirement of first obtaining Lessee's written consent, which consent shall not unreasonably be withheld or delayed....Lessor shall provide Lessee with a copy of any such lease within 15 days following execution thereof, and Lessor shall pay over to Lessee . . . thirty percent (30%) of all amounts actually received or collected from such additional tenants since the last such remittance previously made.
. . .
(e) Any additional tenant's use of the Premises shall at all times comply with and conform to all governmental laws and regulations applicable thereto . . . .

(*Id.*, ¶19). Paragraph 22 states that improvements made to the Parcel are to be considered personal property and not fixtures to the real estate, and can be removed by Ohio State "at all times"—subject to the proviso that if the Tower and concrete foundations remain on the Parcel upon expiration of the lease, they will become Lynchburg's property. (*Id.*, ¶¶22–23).

On February 18, 1997, Ohio State and the City of Bedford ("Bedford") entered into a sublease ("Bedford Sublease"). (Compl. ¶45; Introd. to Exh. G). The Bedford Sublease grants the City the right to use ten specified attachment locations on the Tower in order to run its public service communications system. (Compl. Exh. G ¶1). One of these attachment locations is "for the placement and affixing of one (1) DB 408L-B antenna...." (*Id.*, ¶1(f)). The sublease provides for Bedford to pay $1.00 in rent to Ohio State annually. (*Id.*, ¶3).

4

Virginia Rural Service Area #4 ("Virginia RSA #4 ") is a subsidiary of U.S. Cell and is an entity separate and distinct from Ohio State. (Compl. ¶ 32). On June 8, 2000, Virginia RSA #4, doing business as "U.S. Cellular", entered into a "Tower Space License Agreement" with Appalachian Power Company ("APC"). (D. Mot. S.J. Exh. 4; P. Mot. S.J. p.6). In exchange for a ten-year license to use attachment locations on the Tower with specified antenna types and other rights pertaining to use of the Tower, APC agreed to pay a $700.00 per month license fee (to be increased four percent annually). (D. Mot. S.J. Exh. 4 ¶¶1, 4).[3] In a letter dated June 23, 2000, counsel for Lynchburg stated that he had reviewed this sublease and noted that Mr. Charles Hirtz—President of SESCO—had "expressed concern with these documents." (D. Mot. S.J. Exh. 6).[4]

The tortured history of litigation between the parties must be summarized, because it explains why some of Plaintiffs' claims are barred under principles of *res judicata* and release. On May 2, 1997, Lynchburg filed an action against Ohio State claiming that it had built improvements outside the leased Parcel, and seeking a declaration that the Ground Lease was null and void. (D. Mot. S.J. Exh. 7).[5] This action was transferred and ultimately nonsuited by

---

[3] Because Plaintiffs never objected to Defendants' failure to authenticate this document by affidavit, the Court deems any objection to have been waived and will consider it as evidence.

[4] Although also not authenticated by Defendants, the Court will consider this letter as evidence for the same reasons discussed in footnote 3. Doing so does not run afoul of the Fourth Circuit's admonition not to consider evidence which would be inadmissible at trial, because the letter would qualify as an admission by party-opponent under Fed. R. Ev. 801(d)(2)(C).

[5] Again, Plaintiffs have waived any objection to Defendants' failure to authenticate numerous court documents submitted as exhibits. *See Monks v. Hurley*, 45 F. Supp. 724, 727 (D.C. Mass. 1942) (treating as a true copy the findings and decree of a state court action appended to defendant's summary judgment motion because its authenticity had not been disputed by plaintiff).

5

Lynchburg on August 27, 1997. (D. Mot. S.J. Exh. 8).

The second and third state actions were related. On July 27, 1997, Ohio State sued SESCO, Lynchburg, and Hirtz in Virginia state court, seeking a declaratory judgment regarding its rights of use and quiet enjoyment of the Parcel and certain easements, and an injunction prohibiting the defendants from locking it off the Parcel. (D. Mot. S.J. Exh. 9). On February 2, 1999, the parties informed the court that they had settled this action and recited the settlement terms into the record. (D. Mot. S.J. Exh. 10, p. 3-14). A year and a half later, Ohio State brought an action against Lynchburg, SESCO, and Charles and Patricia Hirtz seeking a declaration that the settlement recited in open court on February 2, 1999 was an enforceable contract. (D. Mot. S.J. Exh. 11, p. 6). On January 22, 2001, the court ruled in Ohio State's favor, declaring the February 2, 1999 agreement to be a valid contract and ordering the parties to comply with it forthwith. (D. Mot. S.J. Exh. 13, Transc. at 148).

One week later, on January 29, 2001, Lynchburg and SESCO brought suit against Ohio State in federal district court in the Eastern District of Virginia ("First Federal Action"), claiming that Ohio State was in breach of the Ground Lease and the February 2, 1999 settlement agreement. (D. Mot. S.J. Exh. 2). Among many counts, they alleged that Ohio State had engaged in sharp business practices and breached the Ground Lease by negotiating with the City of Bedford to sublet space on the Tower and thereby to provide service to another entity—the Central Virginia Planning District Commission—"for virtually no compensation to, and without the knowledge of, [Lynchburg]." (*Id.*, ¶ 64). They also alleged that Ohio State acted in bad faith when it negotiated for a lower monthly rental fee in exchange for the sublease rent-sharing term found in ¶19 of the Ground Lease: Ohio State knew that "by its willful and anticipated actions,

6

no such additional rents or portion thereof would be collected by [Lynchburg]." (*Id.*, ¶ 69).

The First Federal Action was mediated by U.S Magistrate Judge Glen E. Conrad on February 20, 2002. The same day, the parties reached a "Memorandum of Settlement" and agreed to an Order dismissing the case with prejudice. (D. Mot. S.J. Exhs. 15-16; P. Mot. S.J. Exh. 15). The settlement provides for the extension of—and certain modifications to—both the February 2, 1999 settlement and the original Ground Lease. (*Id.*). The Ground Lease was modified to provide "that neither the plaintiffs nor the Defendant shall solicit or accept customers for further ground or tower space on the tower facility owned and maintained by defendant on No Business Mountain." (*Id.*, ¶4). With regard to Virginia RSA#4's June 8, 2000 sublease with Appalachian Power Company, Ohio State agreed to pay the plaintiffs "a sum representing 90% of rental proceeds, or $630.00 per month, whichever is greater . . . retroactive to the inception of the sublease." (*Id.*, ¶3). Paragraph 6 provides that Ohio State has the right, "at its option, to repair and maintain the 20-foot wide access road across plaintiffs' property, without obligation to do so unless the need for such repair is caused by any action of the defendant." (*Id.*). Further, each party agreed to a release of:

> any and all claims, causes of action, and demands for relief as to the opposing party arising from the subject matter of this litigation and preceding litigations between the parties. Specifically, it is agreed that this case shall be dismissed with prejudice as to each and every count.

(*Id.*, ¶9).[6]

---

[6] On June 24, 2002, Plaintiffs sued Ohio State and its legal representatives in the Circuit Court for the City of Roanoke, claiming that they were defrauded during Judge Conrad's mediation and into entering the February 20, 2002 settlement. (D. Supp. Filing Exh. 1 ¶¶23-26).
Plaintiffs now request that if the Court finds that language in this settlement bars any claims in this case, the Court abstain from so ruling until final disposition of their appeal in the Roanoke state court case (they appeal the court's decision to enter judgment notwithstanding a

7

Plaintiffs brought the present action on December 16, 2003. Their claims are too many to summarize here, and will be addressed individually below. They seek entry of summary judgment on all counts, while Defendants seek dismissal of all but Count One.

## III. RES JUDICATA AND RELEASE BAR RELITIGATION OF MATTERS ALREADY DECIDED OR SETTLED

The *res judicata* effect of a prior federal action is determined under federal law. *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir. 1989). *Res judicata* bars relitigation of a cause of action, and its application requires: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004). When the parties agree to dismiss a claim with prejudice, the dismissal constitutes a final judgment on the merits for *res judicata* purposes. *Larken, Inc. v. Wray*, 189 F.3d 729, 732 (8th Cir. 1999); *see Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 534-35 (4th Cir. 1991). Whether two suits arise out of the same cause of action turns on whether the suits and the claims asserted therein "arise out of the same transaction or series of transactions or the same core of operative facts." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996) (internal citations omitted). *Res judicata* bars not only claims "that were actually litigated in a prior proceeding, but also claims that could have been litigated." *Pueschel*, 369 F.3d at 355-56.

A release agreement is governed by the law of contracts. *Berczeck v. Erie Ins. Group*,

---

jury verdict in their favor). (P. Resp. in Opp. p. 9 n.13). This request is denied because Plaintiffs chose to affirm the February 20, 2002 settlement and sue for damages thereunder rather than seek rescission. (D. Supp. Filing Exh. 3 p. 4; Exh. 5). Because the settlement's enforceability is not among the issues on appeal in the Roanoke case, any duty to abstain from relying on the settlement in this matter is also not an issue before this Court.

8

529 S.E.2d 89, 91 (Va. 2000). The scope and meaning of a release is usually governed by the expressed intention of the parties. *Id.*

**IV. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** Defendants move for dismissal of all but Count One of the Complaint, on grounds that the claims are barred on substantive grounds or principles of *res judicata* and release—or some combination of both.

**(A) Count Two**

Count Two alleges that Ohio State materially breached the rent-sharing provision of the Ground Lease by failing to collect and forward to Lynchburg thirty percent of the $1.00 annual rent that the City of Bedford agreed to pay Ohio State pursuant to the February 18, 1997 "Bedford Sublease." Plaintiffs request damages, termination of the Ground Lease, and attorneys' fees and costs. (Compl. ¶91).

Defendants' alleged duty to collect the $1.00 rent and forward $0.30 of it to Lynchburg clearly arises from the same Bedford Sublease Plaintiffs complained of in the First Federal Action.[7] When that case was filed, the rent had not been collected and forwarded to Lynchburg for over three years. Thus, Plaintiffs had a full opportunity then to claim (1) damages and (2) material breach of the Ground Lease justifying rescission.

As noted, *res judicata* bars claims arising from the same transaction or common nucleus of operative facts that *could have been litigated* by the same parties in a previous action. Thus, Count Two is barred—mostly. The wrinkle here is that in an action to recover damages for

---

[7] In the First Federal Action, Plaintiffs alleged that Ohio State had negotiated the sublease with the City of Bedford in bad faith "for virtually no compensation to, and without the knowledge of, [Lynchburg]." (D. Mot. S.J. Exh. 2, ¶64). The action was brought on January 29, 2001 and dismissed with prejudice by agreement of the parties on February 20, 2002.

9

failure to make payments due under a divisible contract—such as an agreement to pay rent in installments—"the plaintiff is entitled to recover only those payments due, or past due, when the action is commenced." *tenBraak v. Waffle Shops, Inc.*, 542 F.2d 919, 926 n. 11 (4th Cir. 1976) (applying Virginia law). Thus, to the extent Plaintiffs claim damages for unpaid rent not due at the time the First Federal Action commenced, Count Two is not precluded under *res judicata* principles. However, the Court will exercise its discretion to dismiss what remains of Count Two, as it involves only *de minimis* contractual damages.[8] *See Virginia Elec. & Power Co. v. Brown*, 144 S.E. 708, 711 (Va. 1928) ("The amount of damages recoverable in an action upon this contract being only six cents, and suit having not been brought to determine a right, this court will have to treat the plaintiff's damage as *de minimis non curat lex*."); 13A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. §3533.3 (2d ed. 1987).

### (B) Count Three

In Count Three, Plaintiffs claim that Ohio State defeated its "reasonable expectation" that (1) the parties would cooperate in the subleasing of Tower space, resulting in additional consideration for Plaintiffs "in the form of a division of rents from third party subtenants," and (2) Ohio State would own and operate the Tower. (Compl. ¶¶94-96). Because Ohio State never intended to own and does not own the Tower, they allege, it has always lacked the intent and the legal right to perform under the Ground Lease. (*Id.* ¶¶100-04). Plaintiffs request a judgment declaring that the Ground Lease is illusory, "[s]ince [Ohio State]'s promise to perform under the Ground Lease was false in its offer, creation and intention; and since [Ohio State] has never

---

[8] Given the sweeping language of the release executed by the parties on February 20, 2002, the Court finds that Count Two is also barred under principles of release. (P. Mot. S.J. Exh. 15 ¶9).

10

obtained and never intended to obtain necessary legal authority to perform under the Ground Lease...." (*Id.*, ¶105).

A contract is "illusory" and unenforceable if a promise is not binding on the promisor and as a result the contract lacks mutuality of consideration. *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 337 (E.D. Va. 2005); *see generally* Restatement (Second) Contracts § 77 (1979). Neither the Ground Lease nor any other evidence of record indicate that Ohio State promised either to own the Tower or to cooperate in subleasing efforts,[9] or that such promises were necessary for contract formation. Defendants *did* promise to pay $54,000[10] in rent upfront in consideration for the 30-year lease. (Compl. Exh. A ¶8). As a matter of law, this binding promise was sufficient to constitute consideration for the 30-year lease term. As Plaintiffs have failed to set forth specific facts illustrating genuine issues for trial, *Celotex*, 477 U.S. at 322, Count Three will be dismissed.

### (C) Count Four

Count Four alleges that Ohio State materially breached terms of Ground Lease by failing to give Plaintiffs notice of the occupation and use of the Tower by an unknown party operating "radio equipment in the UHF band on frequencies 462.975 MHz and 460.625 MHz"; to furnish a copy of any sublease with this unknown UHF operator; or to collect any rent from the operator. (Compl. ¶¶111, 115-17).

---

[9] The Ground Lease provides only that Ohio State "be entitled" to construct, operate, modify, and maintain a Tower on the Parcel. (Compl. Exh. A ¶5). Its rent-sharing provision says nothing about "cooperation" in subleasing. (Compl. Exh. A ¶19).

[10] Plaintiffs admitted in pleadings in the First Federal Action that they accepted the $54,000 payment. (D. Mot. S.J. Exh. 2 ¶11).

11

The undisputed facts of record show that Plaintiffs had notice that the UHF equipment would be placed on the Tower pursuant to the Bedford Sublease. Plaintiffs received a copy and had notice of the Bedford Sublease. (D. Mot. S.J., Exh. E to Exh. 2; Exh. 2 ¶22). The Bedford Sublease identified every allowed antenna attachment, which included "one (1) DB408L-B antenna at 200 feet...on the Tower." (Compl. Exh. G ¶1(f)). This antenna operates in frequency range 450-470 MHz—the range Plaintiffs call the "UHF band." (Compl. ¶11)(Affidavit of Mark Gartley, D. Mot. S.J. Exh. 17, ¶5 & p.11). Plaintiffs have not disputed this evidence. (P. Resp. in Opp. p.12). As a matter of law, no breach of the Ground Lease occurred as alleged, and Count Four will be dismissed.[11]

### (D) Count Five

Plaintiffs allege in Count Five that Ohio State materially breached the Ground Lease by failing to enter into a sublease with Virginia RSA #4 for operation of fixed microwave equipment on the Tower under Part 101 of Federal Communication Commission ("FCC") rules.

A court has a duty to construe a clear and unambiguous contract as a matter of law. *Burns v. Eby & Walker, Inc.*, 308 S.E.2d 114, 116 (Va. 1983). Paragraph 19(a) of the Ground Lease states that Ohio State has "the unreserved and unqualified right to sublet Tower, building, and ground space" to "operators licensed in the Cellular Radiotelephone Service under Part 22 Subpart H of the FCC Rules...without the necessity of obtaining [Lynchburg]'s consent." (D. Mot. S.J. Exh. 1 ¶19(a)). Plaintiffs do not dispute evidence that Virginia RSA #4 is licensed by

---

[11] Count Four is also precluded. In the First Federal Action, Plaintiffs brought claims arising out of the Bedford Sublease—a copy of which was attached as an exhibit. (D. Mot. S.J. Exh. 2, ¶61 et seq., ¶72 et seq. & Exh. G). Under the transactional test of *res judicata*, all claims about Bedford's equipment should have been alleged in the First Federal Action. *Pueschel*, 369 F.3d at 355.

12

the FCC to provide cellular service in the market that includes No Business Mountain. (Affidavit of Mark Gartley, D. Mot. S.J. Exh. 17, ¶4); (P. Resp. in Opp. p. 13). The Court finds that under the clear and unambiguous terms of ¶19(a) of the Ground Lease, Ohio State had no obligation to enter into a sublease with, or collect rent from, Virginia RSA#4. Count Five will be dismissed.

### (E) Count Six

Plaintiffs seek in Count Six a judgment declaring that U.S. Cell, an "unauthorized Third Party," owns and operates the Tower, and that U.S. Cell's construction and operation of the Tower on the Parcel are a material breach of Ground Lease.

Ohio State leased real property for 30 years under a Ground Lease permitting it to construct and operate a communications antenna tower. As tenant-in-possession, Ohio State has (1) control over the Parcel and (2) the power to exclude others from it. *See generally* Restatement (Second) Property: Landlord and Tenant §1.2 cmt a. (1977). This control includes the right to maintain personal property on the Parcel—irrespective of who owns it. And the power to exclude includes a corresponding right to invite others to the Parcel. Nothing in the law of leases or the Ground Lease itself purports to limit the class of persons or entities who may come to the Parcel, or have an ownership interest in the Tower. *See generally* Milton R. Friedman, Friedman on Leases §27:3.1 (4th ed. 1997). Count Six fails as a matter of law.

### (F) Counts Seven and Eight

Plaintiffs allege in Count Seven that by knowingly allowing U.S. Cell to construct, own, and operate the Tower after U.S. Cell had surrendered its authority to transact business in the Commonwealth of Virginia, Ohio State breached its warranty that all actions taken by subtenants with respect to the Parcel would be in accord with the law.

13

Paragraph 19(e) of the sublease provides that any "additional" tenant's use of the Parcel "shall at all times comply with and conform to all governmental laws and regulations." (Compl. Exh. A). Putting aside whether this provision imposes an affirmative obligation on Ohio State, Plaintiffs point to nothing in the record showing that U.S. Cell is a tenant or subtenant, as opposed to Ohio State's invitee. Paragraph 19(e) is simply inapplicable.

Even if U.S. Cell was deemed a tenant, Plaintiffs fail to point to evidence supporting its assertion that U.S. Cell is required to hold a certificate of authority to do business in Virginia. Virginia Code § 13.1-757(A) provides, "A foreign corporation may not transact business in the Commonwealth until it obtains a certificate of authority from the Commission." The statute specifically excludes certain conduct from the definition of transacting business. Mere ownership of real or personal property, without more, is excluded. Va. Code § 13.1-757(B)(9). "Conducting an isolated transaction that is completed within 30 days and that is not one in the course of repeated transactions of a like nature" also does not constitute the transacting of business. Va. Code §13.1-757(B)(10). Plaintiffs do not point to any evidence that Ohio State transacted business in Virginia for the purposes of the statute. (P. Resp. in Opp. p. 15). In the absence of evidence that U.S. Cell failed to comply with governmental law, no material issue of disputed fact exists.

Count Eight alleges that because the Tower is "owned and operated by U.S. Cell, a party lacking authority to transact business within the Commonwealth of Virginia," continuation of the Ground Lease is contrary to public policy. Plaintiffs request that the Ground Lease be declared illegal and void. (Compl. ¶¶151-3). Setting aside the disconnect between the contractual harm alleged and the relief sought, Count Eight should be dismissed for the same reasons discussed in

14

connection with Count Seven.

**(G) Count Nine**

Plaintiffs next ask the Court to declare that the Tower is permanently annexed to the Parcel and is therefore Plaintiffs' property. (Compl. ¶158). Plaintiffs assert that this declaratory relief is warranted because Ohio State did not construct and does not own the Tower. (*Id.*, ¶156).

The unambiguous language of the Ground Lease precludes the relief sought in Count Nine. Paragraph 22 of the Ground Lease provides: "<u>Removal of Improvements</u>. The Improvements are agreed to be [Ohio State]'s personal property and shall never be considered fixtures to the real estate. [Ohio State] shall at all times be authorized to remove the Improvements from the Premises." (D. Mot. S.J. Exh. 1). Paragraph 23 states: "<u>Ownership of Improvements</u>. Upon expiration of the Lease, the Tower and all concrete foundations shall automatically become the property of Lessor . . . ." (*Id.*).

Paragraph 22 does not establish a requirement that Ohio State own the Tower. Instead, it anticipates and removes any uncertainty as to the status of the improvements (whether they should be considered personal property or fixtures) under property law. This provision has no bearing whatsoever on Plaintiffs' present or future property rights with respect to leasehold improvements. Paragraph 23, by contrast, does bear on this issue: If the Tower and foundations are still on the Parcel at the time the lease expires, they will automatically become Plaintiffs' property. The Ground Lease does not expire until 2026, and thus paragraph 23 does not support the relief Plaintiffs seek. They point to no other evidence creating a material issue as to ownership of the Tower. (P. Resp. in Opp. p. 16). Count Nine must be dismissed.

15

### (H) Count Ten

Count Ten alleges that Ohio State materially breached the Ground Lease by failing to cause Central Virginia Planning District Commission ("Central Virginia")—which occupies and uses the Parcel and owns "[a]ll or a substantial portion of radio equipment installed within the Leased Parcel pursuant to the Bedford Lease"—to enter into a sublease. Plaintiffs also complaint that Ohio State failed to collect rent from Central Virginia. (Compl. ¶¶168, 171, 175).

The First Federal Action included complaints about the Bedford Sublease and allegations by Plaintiffs that Central Virginia is the true sub-lessee under that sublease. *See* D. Mot. S.J. Exh. 2 ¶64. Plaintiffs admit that they previously brought a claim involving allegations that the City of Bedford did not own certain equipment on the Tower. (P. Resp. in Opp. p. 16). This claim is thus barred under *res judicata* principles and by the February 20, 2002 release.

Plaintiffs also claim in Count Ten that Ohio State falsely recited in the Bedford Sublease that it owned the Tower, that the City of Bedford relied on this misrepresentation, and, as a result, the Court should declare the Bedford Sublease unenforceable and void. (*Id.*, ¶¶161, 175). Plaintiffs claim to assert the City of Bedford's interests as a "third party beneficiary" of the Bedford Sublease. (Compl. ¶177).

A noncontracting third party may assert rights under a contract if a promise in the contract "is made for the third party's benefit and the evidence shows that the contracting parties clearly and definitely intended to confer a benefit upon such third party." *Kelley v. Griffin*, 471 S.E.2d 475, 477 (Va. 1996). With respect to the Bedford Sublease, Plaintiffs are noncontracting third parties. Plaintiffs fail to point to any evidence in the record showing that the City of Bedford intended to confer any benefit upon either Plaintiff. (P. Resp. in Opp. p. 16-17).

16

Plaintiffs therefore lack third party beneficiary status and standing to assert a claim that the City of Bedford was fraudulently induced into entering the Bedford Sublease.

### (I) Count Eleven

Plaintiffs allege in Count Eleven that Section 19 of the Ground Lease established a fiduciary duty on the part of Ohio State to lease space on the Tower to third parties at market rates and to share these rents with Plaintiffs, and that Ohio State conspired with U.S. Cell, Virginia RSA#4 and others to breach this duty by allowing the Tower to be used rent-free, in violation of Va. Code §18.2-499. (Compl. ¶¶181-82).

Count Eleven is precluded because it is just a variation of claims brought in the First Federal Action, and arises from the same core of operative facts. (*See* D. Mot. S.J. Exh. 2 ¶¶61-79, 84-88, Exh. E).

### (J) Count Twelve

In Count Twelve, Plaintiffs assert that Ohio State represented in paragraph 32 of the Ground Lease that it had "the power and authority...to perform [its]...obligations" under the Ground Lease, when in fact it did not have and had no present intention to obtain the power and authority necessary for its performance. (Compl. ¶186-87). Plaintiffs claim they relied on this misrepresentation and were fraudulently induced to enter into the Ground Lease, and request that it be declared void *ab initio*. (*Id.*, ¶188).

The Ground Lease defines "Lessor" of the Parcel as Lynchburg and its "Owner" as SESCO. (Compl. Exh. A, Introd. Par.). Paragraph 32 states in full: "Lessor and Owner represent and warrant that they have the power and authority to execute this Lease and to perform their respective obligations hereunder." (*Id.*, ¶32). This representation and warranty provision clearly

17

and unambiguously binds only Plaintiffs, and not Defendants, and therefore Count Twelve must be dismissed as a matter of law.

### (K) Count Thirteen

Count Thirteen asserts that U.S. Cell has been unjustly enriched at Plaintiffs' expense "via its unauthorized occupation and use of the Leased Parcel."

The doctrine of unjust enrichment provides that when it is equitable and just to do so, the law implies the promise of a transferee to pay the value of the property which the transferee has accepted, provided that value is "capable of present definite ascertainment." *Campbell County v. Howard*, 112 S.E. 876, 885 (Va. 1922). Plaintiffs point to no evidence that U.S. Cell has "used" the Parcel or otherwise accepted anything of value from Plaintiffs. (P. Resp. in Opp. p. 18) (failing to respond at all to Defendants' motion for judgment with respect to Count Thirteen). Count Thirteen shall be dismissed.

## IV. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

As the Court has already decided to dismiss Counts 2–13, it will not address Plaintiffs' arguments for summary judgment on these counts.

Plaintiffs also request summary judgment on Count One. Count One alleges that Ohio State breached its contractual obligation to repair damage to an access road on No Business Mountain caused by Ohio State's use of heavy, dual-wheeled vehicles. (Compl. ¶¶78-79). It is undisputed that Paragraph 6 of the February 20, 2002 Settlement modified the Ground Lease to create Ohio State's obligation to repair damage to the road caused by its own actions. (D. Mot. S.J. Exh. 15 ¶6).

As the moving party and as the party bearing the burden of proof, Plaintiffs are entitled to

summary judgment only if the pleadings and competent evidence show that there is no genuine issue as to any material fact. To support their motion, Plaintiffs advance a series of factual claims which they do not support with competent evidence. They reference an affidavit which was not actually submitted to the Court. (P. Mot. S.J. p.11). They assert that Ohio State "and its unauthorized coconspirators" moved heavy equipment and vehicles over the access road over nine years of construction and that this use caused severe damage—but do not point to any record evidence supporting these claims. (*Id.*). They reference Ohio State's internal correspondence (which they do not authenticate) indicating that the road was difficult to traverse, but this correspondence dates from February 29, 2000—almost two years before Ohio State assumed maintenance obligations. (*Id.*, Exh. 17). They describe photographs demonstrating "severe wear and tear," but do not submit any photographs.

The only evidence Plaintiffs submit in support of summary judgment on Count One that would be admissible at trial is correspondence from U.S. Cellular's attorney to Plaintiffs.[12] (*Id.*, Exh. 17). The court can also consider the pleadings in ruling on summary judgment. Fed. R. Civ. P. 56(c). The pleadings and correspondence demonstrate a genuine dispute of material fact. They reflect the fact that Defendants spent over $21,000 repairing a portion of a road on No Business Mountain, and that Defendants believed such repairs remedied damage they caused and were obligated to repair. (*Id.*, Exh. 17, Dec. 3, 2002 letter from Creekmore to Fisher; Jan. 27,

---

[12] Plaintiffs merely attach these letters as exhibit 17, and do not attempt to authenticate them. Ohio State did not object to Plaintiffs' reliance on this unverified evidence, however, and thus the court may consider the letters. Other letters offered in exhibit 17—those from Plaintiffs' attorneys to Defendants—cannot be considered by the court. Unlike the letters from Defendants' attorney to Plaintiffs, they are not offered *against* the party making the assertions, as required by Fed. R. Ev. 801(d)(2), and do not appear to qualify under any other exception to the hearsay rule.

19

Case 6:03-cv-00107-NKM-BWC   Document 62   Filed 01/18/06   Page 19 of 20   Pageid#: 484

2003 letter from Creekmore to Fisher). However, the letters and pleading do not resolve the gist of the parties' dispute: whether the $21,000 of repairs fully discharged Defendants' duty under paragraph six the February 20, 2002 settlement. Plaintiffs have thus failed to satisfy their burden of showing that they are entitled to judgment on Count One.

## V. CONCLUSION

All but one of Plaintiffs' claims must be dismissed on grounds of *res judicata*, release, because the evidence of record shows that no genuine issue of disputed fact exists, or because of some combination of these. Counts Two through Thirteen of the Second Amended Complaint will be dismissed in an Order to follow. The Court also finds that there is a genuine dispute as to Count One, and thus will deny Plaintiffs' Motion for Summary Judgment in its entirety.

The Clerk is hereby directed to send a copy of this Memorandum Opinion to all counsel of record.

ENTERED: _____
U.S. District Judge

Date: January 18, 2006